RECEIVED
SEP 16 2024
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
Division

Matthew A. Strom,
    Plaintiff;

v.

Luis Rosa, Warden of Tallahatchie County
    Correctional Facility ("TCCF");
B. Baker, Assistant Warden of TCCF;
S. Walker, Grievance Coordinator at TCCF;
CoreCivic, Inc; sued in their individual and
professional capacities;
    Defendants

Case. No.   3:24-CV-292-MPM-JMV

Hon.

JURY TRIAL DEMANDED

---

**VERIFIED COMPLAINT WITH JURY DEMAND**

---

I. Introduction

1. This is a § 1983 action filed by Plaintiff Matthew A. Strom, a state prisoner, alleging violation of his constitutional right to access reading material and seeking declaratory and injunctive relief and monetary damages.

II. Jurisdiction

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

## III. Parties

3. Plaintiff Matthew A. Strom is a State of Wyoming inmate incarcerated at Tallahatchie County Correctional Facility ("TCCF"), located in Tutwiler, Mississippi, housed in general population, at all times relevant to this complaint. Plaintiff has no prior litigation history.

4. Defendant LUIS ROSA is the Warden of TCCF, and has been at all times relevant to this complaint.

5. Defendant B. BAKER is the Assistant Warden of TCCF, and has been at all times he related information to Plaintiff and enforced policy in this complaint.

6. Defendant S. WALKER is the Grievance Coordinator at TCCF, and has been at all times relevant to this complaint.

7. Defendant CORECIVIC, INC. is a private Corporation which has been, at all times relevant to this complaint, under contract with the State of Wyoming, Wyoming Department of Corrections ("WDOC") to house inmates for the WDOC.

8. Defendants ROSA, BAKER, WALKER, and CORECIVIC, INC. were at all times relevant to the complaint acting under color of state law, and are sued in their individual and official capacities.

## IV. Exhaustion of Available Remedies

9. Plaintiff exhausted his administrative remedies prior to filing this complaint.

V. Factual Statement

A. Property Allowed at TCCF

10. Plaintiff was transferred to Tallahatchie County Correctional Facility ("TCCF") in late November of 2023.

11. Upon his arrival at TCCF, Plaintiff was issued an Inmate Handbook, which details the personal property that inmates are allowed, including ten softcover books, magazines, and newspapers.

12. In addition to a limit on the quantity of items inmates are allowed to possess, CoreCivic, Inc. ("CoreCivic") and TCCF also regulate how inmates may acquire new items.

B. CoreCivic Policy Related to the Acquisition of Books

13. CoreCivic Policy 16-1, Correspondence Procedures ("CCP 16-1") defines publications as, "[b]ooks, periodicals, newspapers ... published by an individual, organization, or corporation that is distributed or made available through any means."

14. CCP 16-1 states that publications will be prohibited if they interfere with legitimate penological objectives, and lists numerous criteria that can be used to reject a publication, such as nudity.

15. CCP 16-1 also sets out procedures specific to TCCF, and provides that at TCCF, "[a]ll incoming mail ... packages, regardless of contents or to whom they are addressed, shall be put through an X-ray machine to prevent the introduction of contraband."

16. CCP 16-1 provides that at TCCF, "[a]ll packages received in the Mailroom that are addressed to a detainee shall be processed through Receiving and Release where they will be searched, inventoried, and issued to the detainee."

17. CCP 16-1 provides that at TCCF, "[d]etainees shall not be allowed to receive package services directly from person [sic] correspondents. ... Personal correspondents do not include ... publishers, booksyores [sic], book distributors, etc."

18. CCP 16-1 requires all publications to be reviewed and inspected to ensure "that the publication was sent directly from a recognized publisher, distributor, or authorized retailer."

19. CCP 16-1 gives the Warden or Facility Administrator the authority to refuse to process publications shipped from "persons, entities, and organizations [that] cannot assure the facility that the publications have not been handled by persons other than their employees and the employees of the mail or shipping service used for shipments to prevent the introduction of contraband."

20. CCP 16-1 provides that, "[u]nless mandated by contract, law, or regulation, publications will not be rejected solely because they were purchased as gifts or purchased using funds other than those from inmate/detainee accounts."

21. CCP 16-1 also regulates the ordering and receipt of "special packages," which, to Plaintiff's knowledge, is referring to the "Access SecurePak" quarterly incentive package program, and not book packages.

22. CCP 16-1 states that no items can be received in packages at TCCF, contradicting other policy provisions.

23. TCCF routinely allows the receipt of both Access SecurePak incentive packages and book packages sent from Edward R. Hamilton, in contradiction of this policy.

24. CoreCivic Policy 14-6, Inmate/Detainee Property ("CCP 14-6") sets out further policies related to the acquisition of books that contradict CCP 16-1, and are more restrictive than CCP 16-1.

4

25. CCP 14-6 provides that "...inmates/detainees may acquire additional personal property through the commissary and/or facility approved vendors."

26. CCP 14-6 requires that "[a]ll items received must be new, in the original package, and shipped directly from the approved vendor."

27. CCP 14-6 states that "[a]llowable property in excess of the amount authorized by the Allowable Personal Property List will be confiscated."

28. CCP 14-6 requires that confiscated excess property be disposed of by means such as mail-out, destruction, or donation.

C. TCCF Policy Related to the Acquisition of Books

29. Shortly after his arrival at TCCF (around December of 2023), Plaintiff went to the TCCF P-Library, and asked about the book ordering procedure at TCCF.

30. Plaintiff was told in December of 2023 by TCCF Librarian Ms. Moniette that books could only be ordered from Edward R. Hamilton ("ERHBC"), per the Warden.

31. The prominent feature on ERHBC's book catalogs is the heading "Bargain Books," so Plaintiff also refers to ERHBC as Bargain Books.

32. Defendant Rosa, in his role as Warden, reiterated this policy in a July 2024 memo, where he stated, "Books can only be ordered from [ERHBC]. Inmates must include an order guide, Release of Funds, and stamped envelope to order." ("July Warden's memo")

33. TCCF has developed a Special Purchase Order ("SPO") for Books that inmates are required to fill out and take to the library with a stamped envelope and Release of Funds to order books.

5

34. TCCF does not process any book order that includes books not available from ERHBC.

35. TCCF changed their practice in or around August of 2024 to no longer approve the ordering of hardback backs through ERHBC.

36. Prior to this change, the practice of TCCF was to allow the ordering of hardback books, then remove the cover when the book arrived.

37. Plaintiff has, since this change, received a hardback book with the cover removed, but this was sent from an order placed prior to this change of practice, and does not represent a reversion to the practice of allowing hardback books to be ordered.

38. TCCF rejects any book order that arrives at the facility from any commercial source other than ERHBC (Amazon, Barnes and Noble, Books N Things).

### D. Attempts to Acquire Books

39. Plaintiff counted the books available in P-Library (the only library available to him) on 8/13/24. There were approximately 40 shelves with books on them, with approximately 30-40 books per shelf, totaling an estimated 1,200 to 1,600 books. A significant portion of these books were religious, duplicates, Spanish language, or "dime-paperback" romances.

40. Throughout the first half of 2024, Plaintiff examined numerous Bargain Books catalogs looking for books to order, but rarely found books he was interested in ordering.

41. Most Bargain Books catalogs contained the same books throughout subsequent issues, seldom changing the books on offer.

42. The August 9, 2024 ERHBC catalog (the most recent edition available to Plaintiff at the time) ("ERHBC catalog") "Fantasy Fiction" section had only 18 paperback entries—some of which were box sets.

43. The ERHBC catalog "Science Fiction" section had only 9 paperback entries.

44. The ERHBC catalog cover states, "...all books are hardbound unless marked otherwise."

45. The ERHBC catalog order form states, "[t]his catalog contains publishers' closeouts, overstocks, remainders, and current titles at special prices. ... Most items are in limited supply..."

46. At least four "Fantasy Fiction" entries (13 of 36 books) in the ERHBC catalog have not changed since at least January of 2024.

47. Plaintiff submitted a request on the ViaPath Tablet Email/Request system ("Tablet") to the Library on 1/16/24, asking about the procedure to get a new book vendor added, and requesting books by Stephen King, Diana Gabaldon, Elizabeth George, Robert Jordan, and any mysteries in general.

48. Plaintiff never received a response to the 1/16/24 Library request.

49. Plaintiff submitted a Tablet request to TCCF Education on 6/20/24 asking for special permission to order a Precalculus and Calculus textbook not available through ERHBC, and stating that he had looked at resources available on the Tablet and they were inadequate.

50. TCCF Education responded on 6/21/24, telling the Plaintiff that because he was not enrolled in a college course, he could not order these books. They suggested Plaintiff talk to P-Librarian Ms. Moniette about inter-library loan.

51. Plaintiff submitted a Tablet request to TCCF Prisoner Accounts on 6/20/24, asking if he could submit an SPO and have Precalculus and Calculus textbooks ordered from a vendor other than ERHBC.

52. TCCF Prisoner Accounts responded to this request on 6/21/24, stating, "If it's not available through ERHBC you cannot order it."

53. Plaintiff submitted a Tablet request to the Warden on 8/9/24, proposing TCCF allow a new Book vendor, "Books N Things." This request mentioned the deficiencies of Bargain Books (limited variety, a business model focused on discount/overstock books) and suggested that allowing Books N Things would help remedy this. The request further stated that Books N Things deals specifically with prisons, and has passed the WDOC vendor-vetting procedure, so there should be no security concerns.

54. Defendant Baker answered this request (presumably through his assistant) on 8/9/24: "AW Baker stated: 'There is [They (i.e., Books N Things) are] not an approved vendor and there are no plans to add new vendors at this time.'"

55. Plaintiff submitted a follow-up Tablet request on 8/11/24, stating that by restricting Plaintiff to one vendor that has a very limited selection, TCCF is violating his First Amendment rights. Plaintiff further stated his desire to order educational books and quality fiction, complained of the inadequacy of Bargain Books, and reiterated that there are no possible security concerns with Books N Things. Plaintiff requested that the denial be reconsidered. This request's subject was "Violation of Rights – New Book Vendor."

56. Defendant Baker answered this request on 8/11/24: "AW Baker stated: 'There is an approved book vendor in place.'"

8

57. Plaintiff submitted an SPO for Books on 8/12/24, attempting to order six books (Go Tell The Bees That I Am Gone by Diana Gabaldon, Banquet of Consequences by Elizabeth George, a Precalculus textbook, Call of the Night vol. 1, Crucible of Souls by Mitchell Hogan, and A Little Life by Hanya Yanagihara).

58. At least three of the books Plaintiff attempted to order (Banquet of Consequences, A Little Life, and Go Tell The Bees That I Am Gone) are award-winning/bestselling books, and are not obscure titles.

59. At least three of the books Plaintiff attempted to order (Call of the Night vol. 1, Go Tell The Bees That I Am Gone, and A Little Life) are available in Books N Things 2023/2024 catalog.

60. P-Librarian Ms. Moniette is responsible for approving or denying book orders at TCCF.

61. P-Librarian Ms. Moniette looked up the books on Plaintiff's SPO on 8/13/24 and told him that he could not order any of the books because they were not available through ERHBC. Ms. Moniette documented this denial on Plaintiff's SPO.

62. Plaintiff spoke with TCCF Unit Manager Moton on 8/12/24 about the lack of available books at TCCF. She agreed with the Plaintiff that TCCF needed to add new book vendors, but said she didn't have the authority to do this, and that Plaintiff needed to write the Warden.

63. Plaintiff asked Ms. Moniette on 8/13/24 about inter-library loan ("ILL"). She told Plaintiff that the inter-library loan program was no longer active, that it had been stopped during the COVID pandemic. She said she would look into whether there was any program available now, and that Plaintiff should ask her supervisor.

64. Plaintiff submitted a paper request to the Library on 8/13/24, asking about the availability of ILL services at TCCF.

65. Plaintiff received a response to this request on 8/15/24, which said there was an ILL program through the state library that allowed offenders to borrow a book and read it for two weeks.

66. Plaintiff submitted an ILL request for two books (a Precalculus textbook and Crucible of Souls) on 8/16/24, of which (to Plaintiff's understanding) a maximum of one book would be processed. Also included was a letter asking about the availability of the four other books.

67. Mr. Hargett is the WDOC Contract Monitor at TCCF, and serves as an intermediary between inmates, TCCF, and the WDOC. Mr. Hargett is, to Plaintiff's understanding, an independent contractor responsible for helping to mediate disputes between inmates and TCCF and ensuring compliance with the contract between WDOC and CoreCivic.

68. Plaintiff spoke with Mr. Hargett on 8/16/24, and brought up his concerns with the book ordering process at TCCF. Mr. Hargett agreed with the Plaintiff and said that TCCF should provide more options, and that Bargain Books was not enough. Mr. Hargett told the Plaintiff to continue his efforts to get this policy changed, but said that he did not have control over TCCF policy.

69. Plaintiff was told by Ms. Moniette on 8/22/24 that (previously unbeknownst to both of them) he needed to submit a stamped envelope with his ILL request, which he then did.

70. Plaintiff submitted an additional SPO for Books on 8/27/24, attempting to order two books (Prison Profiteers and The Celling of America).

71. This SPO was denied on 8/27/24 due to the books not being available through ERHBC.

10

72. These two books are available through the Human Rights Defense Center, a nonprofit which advocates for civil rights and makes books broadly available to the general public.

73. Plaintiff believes that at least three of these books (Prison Profiteers, The Celling of America, Precalculus) will undoubtedly be unavailable through ILL, and that any ILL offerings do not substantially broaden Plaintiff's access to reading material due to the two week time limit on possessing the books, as well as the lack of availability of books such as those available through HRDC and college textbooks.

### E. Grievance Process

74. TCCF has a three step grievance procedure: Informal Resolution, Formal Grievance, and a Grievance Appeal (to the Warden).

75. CoreCivic Policy 14-5, Inmate/Resident Grievance Procedures ("CCP 14-5") is the controlling policy for the grievance process at TCCF.CCP 14-5 defines the Grievance Officer as the "[f]acility staff member responsible for tracking and management of the grievance process. This includes coordination of investigations and ensuring that resolution is reached."

76. CCP 14-5 directs that, "At [TCCF] Informal Resolution forms will be submitted to: Grievance Office to be date stamped and logged, then forwarded to the appropriate department heads."

77. CCP 14-5 sets out the responsibilities of the staff member assigned to complete the Informal Resolution process, including: "a. Conducting an initial meeting with the inmate/resident to discuss the issue; b. Meeting with all staff members involved with the issue; Researching necessary information...; d. Developing a response to present to the inmate/resident...."

11

78. CCP 14-5 requires the Grievance Officer to "[forward] formal grievances to the appropriate department head for response."

79. CCP 14-5 requires the Grievance Officer to "[coordinate] the timely investigation and response of formal grievances."

80. CCP 14-5 provides that "[f]ormal grievance resolution should be determined by the appropriate department head in relation to the formal grievance..."

81. CCP 14-5 requires the Grievance Officer to "...forward all grievance appeals to the Warden/Administrator for review and a final response."

82. CCP 14-5 requires that "[e]ach appeal will be responded to by including a written explanation for approval/disapproval.

83. CCP 14-5 states that, as related to the Grievance Appeal process, "[t]he Warden/Administrator's decision is final...."

84. CCP 14-5 states, "The informal resolution process and formal grievance process shall afford the inmate/resident the opportunity for meaningful remedy. ... Remedies may include... [a] change of procedures or practices appropriately related to the complaint or conditions...."

85. CCP 14-5 states, "At [TCCF], the position designated as the Grievance Officer is: Grievance Coordinator."

86. Plaintiff submitted an Informal Resolution on 8/12/24, where he restated the issues and inadequacies of the current book ordering process, his previous attempts to order books, his proposals for a new vendor, and a complaint that the current TCCF policies were violating his rights.

87. Defendant Walker responded to the Informal Resolution on 8/15/24. Defendant Walker's response consisted of two words: "See attachment." Attached was the July Warden's memo which told inmates they could only order from ERHBC.

88. Defendant Walker responding to the Informal Resolution violates CCP 14-5 in that she did not forward the form to the appropriate department head, did not conduct a meeting with Plaintiff, and did not develop a response (insofar as giving the Plaintiff a copy of the memo he already referenced and was complaining about cannot be considered a response).

89. Plaintiff believes, based on the quality of the grievance responses he was given, that Defendant Walker also failed to meet with staff members involved in this issue, as required by policy.

90. Plaintiff proceeded to submit a Formal Grievance on 8/16/24, which presented essentially the same information, but was typewritten and formatted to present the points more clearly. Additionally, this grievance made note of a case against Corrections Corporation of America (either CoreCivic's parent company or a former name of CoreCivic) involving nearly the same circumstances in which the inmate was granted summary judgment (*Calhoun v. Corr. Corp. of Am.*, 2010 U.S. Dist. LEXIS 102067 (D.Minn., Sept. 28,2010)).

91. Defendant Walker responded to the Formal Grievance on 8/27/24. Defendant Walker's response, in its entirety, said, "Be advised this issue has been addressed and denied. Per TCCF policy." And then, "See attachment." Attached was a second copy of the July Warden's memo.

92. Defendant Walker violated CCP 14-5 when she failed to forward the Formal Grievance to the appropriate department head, and failed to coordinate an investigation.

13

93. Plaintiff submitted a Grievance Appeal to the Warden (through the Grievance Coordinator) on 8/21/24, where he restated the information previously given and referred to the previous proposals and complaints.

94. Defendant Walker responded to the Grievance Appeal on 8/23/24. Defendant Walker's response, again in its entirety, said, "Be advised per policy your request has been denied. See attachment." Attached was a third copy of the July Warden's memo.

95. Defendant Walker violated CCP 14-5 when she responded to Plaintiff's Grievance Appeal in lieu of the Warden, and denied Plaintiff the right to have his Appeal heard by the Warden.

96. Plaintiff believes that Defendant Walker did not forward Plaintiff's Grievance Appeal to the Warden, as if she had, the Warden presumably would have responded as policy requires him to.

97. Defendant Walker's actions constructively denied Plaintiff any meaningful access to the grievance process at TCCF.

98. Defendant Walker's numerous failures to follow established grievance procedures made her an active and willing participant in the violation of Plaintiff's First Amendment rights. While she may not have had the authority to overrule the Warden, Defendant Walker still had the duty to follow the grievance procedures to enable Plaintiff to voice his complaints.

## VI. Claims for Relief

99. The restriction on vendors allowed at TCCF and restriction of Plaintiff's ability to order books imposed by Defendant Rosa in his role as Warden of TCCF were an exaggerated

response to policy concerns. These restrictions prevented Plaintiff from accessing numerous books and thus violated Plaintiff's First Amendment right to access information.

100. Defendant Rosa had the duty to respond to Plaintiff's Grievance Appeal. The denial of Plaintiff's Grievance Appeal furthered the violation of Plaintiff's First Amendment rights, and in the light of the details presented by Plaintiff in the grievance as they related to the effect this policy was having on Plaintiff, as well as the case law presented to Defendant Rosa that indicated his policies may be unconstitutional, showed a callous indifference to Plaintiff's First Amendment rights.

101. Defendant Baker denied Plaintiff's Warden requests that sought to correct the violation of Plaintiff's First Amendment rights on two occasions.

102. By denying Plaintiff's two Warden requests, Defendant Baker enforced the unconstitutional TCCF policy and allowed the violation of Plaintiff's First Amendment rights to continue.

103. The lack of detail in Defendant Baker's responses, and their refusal to acknowledge or address any of the inadequacies with the book ordering process at TCCF presented by Plaintiff show a callous indifference to Plaintiff's First Amendment rights.

104. By failing to follow TCCF Grievance Procedures, Defendant Walker was negligent in her duties, and constructively denied Plaintiff access to the grievance process at TCCF. This behavior represents a willing participation in the denial of Plaintiff's First Amendment rights.

105. Defendant Walker's repeated violations of TCCF Grievance Procedures, most especially her failure to meet with the Plaintiff and forward grievances to the appropriate department heads, show a callous indifference to Plaintiff's First Amendment rights.

106. CoreCivic, Inc. policy was set or modified by Defendant Rosa when he issued a memorandum restricting the ability of Plaintiff to order books. The policies of CoreCivic, Inc. therefore caused Plaintiff's First Amendment rights to be violated.

## VII. Relief Requested

WHEREFORE, Plaintiff demands a jury trial on these matters and requests that this Court grant the following relief:

    A. Declare that each defendant violated Plaintiff's First Amendment rights when they substantially restricted Plaintiff's ability to access reading material;

    B. Issue an injunction requiring Defendant Rosa or his agent to provide access to one or more additional book vendors of a size and quality that Plaintiff's access to reading material would be significantly broadened and that should reasonably be expected to give Plaintiff access to the books referenced in his complaint;

    C. Award punitive damages in the amount of $100 each against all Defendants.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

D. Award nominal damages in the amount of $1 against each defendant.

E. Grant costs and such other relief as it may appear that Plaintiff is entitled to.

_8/28/24_
Date

Respectfully submitted,

_Matthew A. Strom_
Matthew A. Strom
Plaintiff, *pro se*

TCCF, #31875
19351 US Hwy. 49 N
Tutwiler, MS 38963



Confidential
Legal Mail

2 of 2